NIQA
JT 

2:17-cv-5590

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

17  5590

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ian Clayman

**(b)** County of Residence of First Listed Plaintiff  Queens County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael D. Raffaele
1230 County Line Road
Bryn Mawr, PA 19010 (610) 922-4200

## DEFENDANTS
University of Pennsylvania

County of Residence of First Listed Defendant  Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Office of General Counsel
2929 Walnut Street, Suite 400
Philadelphia, PA 19104 (215) 746-5222

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 12132-33
Brief description of cause:
discrimination on the basis of disability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE  13 December 2017
SIGNATURE OF ATTORNEY OF RECORD  /s/ Michael D. Raffaele

DEC 14 2017

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

**17  5590**

Address of Plaintiff: 135 Beach 136th Street, Belle Harbor, NY 11694

Address of Defendant: 2829 Walnut Street, Suite 400, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: the University of Pennsylvania
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☑

Does this case involve multidistrict litigation possibilities?  Yes☐  No☑

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

ARBITRATION CERTIFICATION
(Check Appropriate Category)
Michael D. Raffaele, Esq._____, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 12/13/17     _____ [signature]     PA 93615
                    Attorney-at-Law            Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

DEC 14 2017

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____  _____  _____
             Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| MR. IAN CLAYMAN | Plaintiff : | CIVIL ACTION |
| v. | : | |
| UNIVERSITY OF PENNSYLVANIA | Defendant : | NO. 17 5590 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| | | |
|---|---|---|
| 12 December 2017 | Michael D. Raffaele | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 922-4200 | (610) 646-0888 | Michael@MyKidsLawyer.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 14 2017

 

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MR. IAN CLAYMAN,<br>　　　　　　*Plaintiff,*<br>v.<br><br>UNIVERSITY OF PENNSYLVANIA,<br>　　　　　　*Defendant.* | CIVIL ACTION<br>NO:_____17  5590<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

**FILED DEC 14 2017 KATE BARKMAN, Clerk By _____ Dep. Clerk**

## COMPLAINT

Plaintiff Ian Clayman ("Ian" or "Mr. Clayman") brings this civil action under Federal law and the laws of the Commonwealth of Pennsylvania, seeking compensatory damages against Defendant University of Pennsylvania ("the University") for offenses arising from, *inter alia*, Defendant's (a) breach of contract; (b) violation of Section 504 of the Rehabilitation Act; and (c) violation of Title II of the Americans with Disabilities Act.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the Section 504 and Title II claims in this case pursuant to 28 U.S.C. § 1331. Plaintiff's claims arise under the laws of the United States. *See* 29 U.S.C. § 701, *et seq.* and 20 U.S.C. § 1681, *et seq.*

2. This Court has jurisdiction over the claims in this case arising under Pennsylvania law pursuant to 28 U.S.C. § 1332(a)(1). Mr. Clayman is a citizen of New York. Defendant is an entity based in Pennsylvania, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

3. This Court also has supplemental jurisdiction over the Pennsylvania law claims in this

1



case pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims that are within this Court's original jurisdiction that they form part of the same case or controversy.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

## PARTIES

5. Plaintiff Ian Clayman is a New York resident diagnosed with multiple disabilities. He resides at 135 Beach 136th Street, Belle Harbor, New York 11694.

6. Defendant University of Pennsylvania is a private university with its main campus and principal place of business located in Philadelphia, Pennsylvania.

7. At all times material hereto, Defendant acted by and through its agents, servants, employees, workmen and/or representatives who were acting in the course and scope of their respective agency or employment and/or in the promotion of Defendant's business, mission and/or affairs.

## FACTUAL BACKGROUND

8. Ian Clayman began attending the University of Pennsylvania in August 2012. He was admitted early decision to the School of Engineering and Applied Science ("SEAS") Digital Media Design ("DMD") program.

**Freshman Year (2012-13)**

9. Ian's first semester at the University was punctuated by a series of personal tragedies.

10. In October 2012, Ian developed a severe bronchial infection. He was hospitalized and for two weeks was unable to attend classes. Ian did not fully recover from the infection until December 2012.

11. Shortly after Ian was able to resume classes, Superstorm Sandy devastated his family and home. During the storm, Ian's parents nearly drowned while trapped in their garage. Ian's home took eighteen months to rebuild.

12. Then, in November 2012, Ian's 62-year-old uncle died suddenly from complications due to Sandy.

13. Ian had a mild history of distractibility and organizational problems prior to attending the University; the academic demands of freshman year, coupled with the emotional toll of this succession of traumatic events, intensified his difficulty focusing. As a result, his performance in college fell below both his expectations and his prior level of achievement.

14. Ian began therapy for trauma in January 2013 with psychiatrist Dr. Marc Inver.

15. In May 2013, after a series of psychological tests, psychologist Dr. Anya Barak diagnosed Ian with Attention Deficit Hyperactivity Disorder ("ADHD") characterized by deficits in executive function, and Adjustment Disorder with Mixed Depressed Mood and Anxiety.

**First Request for Accommodations (August 2013)**

16. In August 2013, Ian sought assistance from the University to get back on track academically. He submitted Dr. Barak's report and recommendations to the Weingarten Center and Student Disability Services ("SDS").

3

17. Dr. Barak had recommended a series of easily-implemented accommodations, including, *inter alia*: a seat near the professor for instruction; the provision of lecture notes and class outlines; note-taking with Livescribe Pulse Smart Pen; extra time to complete long assignments and/or shorter assignments; executive functioning coaching; and regular meetings with professors. She also recommended weekly therapy and that the University strike Ian's failing grade (due to an unresolved "incomplete") in course CIS 191 with the provision that he be required to take the course again.

18. In September 2013, Ian and his parents met with Myrna Cohen, Executive Director of the Weingarten Center, and Martha Sullivan, Ian's assigned learning instructor, to discuss Dr. Barak's recommended accommodations.

19. During this meeting, when Ian requested preferential seating, the University's agents told him that this was outside of SDS's power because students could choose their own seating in class. When Ian requested outlines of the courses he was taking, they told him that this was outside of SDS's power because only professors could decide to make outlines available to a student.

20. Dr. Cohen and Ms. Sullivan instead provided Ian with a list of "Possible Accommodations". He was instructed to consider accommodations off of that list and work with SDS within those confines. There was no offer or suggestion of other reasonable accommodations the University could offer as informed by Dr. Barak's recommendations.

21. At Ms. Sullivan's advice, the only "Possible Accommodation" that Ian pursued was "permission to record lectures on audiotape with professor's approval via a Livescribe Pulse Smart Pen". His course load was also reduced from five to four courses.

**Sophomore Year (2013-14)**

22. Although Ian struggled without appropriate accommodations, he persevered in his studies during his sophomore year. Unfortunately, however, Ian was set back yet again by damaging guidance from Amy Calhoun, Associate Director of DMD.

23. Ms. Calhoun advised DMD students of a paid summer internship within the University's Archaeology Department requiring 3-D modeling skills. Ian accepted the internship, which in fact turned out to be unpaid and involved no 3-D modeling.

24. Ms. Calhoun advised Ian to take BIO 101 during Summer Session. After Ian completed the course, Ms. Calhoun realized that he had already received the same credit from his high school AP Biology course.

25. Ian's tuition for the summer session was refunded, but Ian missed an opportunity to benefit from a valuable internship or course during his summer session, as well as the chance to use his summer to make up ground academically. This discouraged Ian and wasted his time.

**Junior Year (2014-15)**

26. Ian's junior year was perhaps more traumatic than his freshman year.

27. Ian began the school year with the realization that his summer was wasted academically, still grappling with the unresolved effects of his prior traumas and his diagnoses, and still without reasonable accommodations commensurate with his needs.

28. In August 2014, Ian's only remaining uncle, Phil, then 55, was diagnosed with terminal cancer.

29. In October 2014, Ian's 9-year-old dog died.

30. Finally, in October 2014, one of Ian's close friends, also a University student, committed suicide.

5

31. The intersection of the losses and the effects of his disabilities resulted in Ian's first semester of Junior year being a haze of unprocessed trauma. Ian underwent additional psychological testing by Dr. Katherine Cody to get a better understanding of his needs as well as additional recommendations for academic and social-emotional supports. Dr. Cody's evaluation revealed an additional diagnosis of Social Anxiety Disorder in her psychological report.

32. Dr. Cody provided additional educational recommendations, limiting herself to SDS's list of "Possible Accommodations", to accommodate the impact Ian's anxiety has upon his adaptive and academic performance, including, *inter alia*: extended time for test taking; alternative location for testing; and direct 1:1 coaching targeting specific executive functioning needs.

**Second Request for Accommodations (September 2015)**

33. In September 2015, Ian submitted Dr. Cody's report to SDS, physically handing Ms. Sullivan a copy, again requesting help with his ongoing difficulties. His parents also emailed the report to Ms. Sullivan.

34. Shortly after submitting his request to SDS, Ian's Uncle Phil succumbed to cancer.

35. Ian subsequently met with Ms. Sullivan to discuss Dr. Cody's recommendations. Again, at Ms. Sullivan's recommendation, Ian did not pursue extended time or alternative location for test taking.

**Medical Leave of Absence (2015-17)**

36. Suffering from the continued aftereffects of his personal traumas and without appropriate accommodations from the University, Ian continued to struggle with his coursework. Instead of engaging with Ian to address his particular needs, in November 2015, Dr. Sonya Gwak,

SEAS's Director of Student Life, and Lauren Rudick of Student Intervention Services, both recommended Ian take a medical leave of absence.

37. Ian took their advice and began a medical leave of absence in November 2015.

**Return from Medical Leave of Absence (January 2017)**

38. Ian did not return from medical leave until January 2017. Upon his return, Ian enrolled in four courses: two in engineering and two in liberal arts.

39. Ian continued to struggle academically. Ian had particular difficulty in his engineering courses, as he had previously.

40. In March 2017, Ian met with another University representative, his advisor, Dr. Norman Badler, seeking appropriate supports. Given Ian's demonstrated strength in liberal arts, Dr. Badler recommended Ian transfer to the University's College of Arts and Sciences and change his major to Cinema Studies as an alternative to attain his career goal.

**Request to Transfer to the College of Arts and Sciences (April 2017)**

41. At Dr. Badler's recommendation, Ian decided to transfer from SEAS to the College of Arts and Sciences. Ian withdrew from both of his engineering courses and completed his liberal arts courses.

42. In April 2017, Ian met with Dr. Janet Tighe, the Director of Academic Advising at the College of Arts and Sciences, to discuss transferring his major to Cinema Studies. After hearing about the events in Ian's life since he began attending the University, Dr. Tighe told Ian that she would advocate for him.

43. Shortly thereafter, Ian received an email informing him that his application to transfer to the College of Arts and Sciences was denied. The University informed him that he could not

matriculate because they only accept sophomores with a minimum 3.0 grade point average as transfer students. Ian was an academic junior with an overall GPA of 2.71, but a GPA in his liberal arts classes of 3.52.

### Third Request for Accommodation (April/May 2017)

44. Ian again requested an accommodation from the University in consideration of his educational and psychological history. He referred to the two psychological reports he had previously provided and shared how his previous requests for accommodations had been ostensibly ignored. Ian requested that the University reconsider his application to the College of Arts and Sciences in light of the University's failure to accommodate his disabilities and requested that they take into consideration his liberal arts aptitude.

45. Again, the University denied granting Ian transfer as an accommodation without engaging further to find alternative solutions.

46. After the College of Arts and Sciences rejected Ian, Dr. Gwak informed Ian that he would be dropped from SEAS. Accordingly, Ian was left with no options to continue his education at the University. Dr. Gwak told Ian he had only two choices: leave the University voluntarily or be involuntarily dismissed by the University on May 31, 2017.

47. Then, on May 31, 2017, the University told Ian SEAS would not drop him, but would require him to change majors within SEAS.

### Grievance Process

48. On May 30, 2017, Ian sent a grievance letter to Dr. Max King, Associate Vice Provost for Health and Academic Services, regarding SDS's failure to engage in the interactive process and failure to grant the reasonable accommodations he requested. Ian noted that instead of

8

engaging in a collaborative process in determining his eligibility for accommodations, Weingarten and SDS engaged in a rigid and one-sided offering of limited services without giving adequate attention to Ian's actual needs.

49. In addition to submitting the grievance, Ian requested reconsideration of the accommodation request he made to transfer to the College of Arts and Sciences.

50. Dr. King contacted Ian in early June with several questions. Ian answered those questions promptly; Dr. King then went silent.

51. After 59 days without a response, Ian contacted the University's central administration on July 28, 2017, proposing to withdraw his grievance if, considering all the above extenuating circumstances, the University would permit him to transfer to the College of Arts and Sciences.

52. Dr. King finally responded to Ian's grievance on August 10, 2017. Dr. King claimed that SDS had appropriately engaged with Ian during the review process based on the patently incorrect belief that the only accommodation suggested in Dr. Barak's report in August 2013 was the removal of Ian's failing grade in CIS 191 with an opportunity to retake the course.

53. In fact, while this was the only item listed by Dr. Barak under the subheading "Accommodations", Dr. Barak's report contains one-and-a-half pages of recommendations to support Ian's education in consideration of his issues with attention, executive functioning, and anxiety. Dr. King – like the University – ignored all of them.

54. Further, Dr. King asserted that the University cannot offer consideration of a transfer as an accommodation when it would involve a variance from University policy.

55. On August 18, 2017, the College of Arts and Sciences refused to reconsider or rectify the denial of Ian's requested transfer.

9

56. On August 22, 2017, Ian filed an appeal to Dr. King's decision to Ms. Joann Mitchell, the University's Senior Vice President for Institutional Affairs and Chief Diversity Officer. The University denied that appeal as well.

## CLAIMS FOR RELIEF

## COUNT I: BREACH OF CONTRACT – DISCLOSURE OF DISABILITY PROCESS

57. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

58. At all relevant times, Ian and Defendant were operating under a contract.

59. The contract between the University and Ian consisted of, *inter alia,* the written guidelines, policies and procedures as contained in the written materials distributed to Ian over the course of his enrollment at the University, as well as the brochures, email correspondence between the Claymans and the University officials, and other official statements, policies and publications of the institution.

60. Ian paid valuable consideration in the form of tuition and expenses to attend the University and receive services as a student with a disability.

61. The University breached its contract with Ian by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiff respectfully requests Judgment in his favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

10

## COUNT II – 504 OF THE REHABILITIATION ACT OF 1973 – FAILURE TO ENGAGE IN INTERACTIVE PROCESS AND FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS

62. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

63. The University is subject to Section 504 because it is a recipient of federal funding.

64. Ian is an individual who suffers from ADHD, Adjustment Disorder with Mixed Depressed Mood and Anxiety, and Social Anxiety Disorder. The culmination of Ian's mental impairments substantially limits several major life activities, including but not limited to concentrating, sleeping, organization of daily tasks, focus and attention.

65. At all relevant times, Ian was a qualified handicapped person with respect to education services because he was able to attend school and participate in educational programs.

66. The University denied Ian the benefits of, and otherwise subjected Ian to discrimination under, its programs or activities.

67. Ian followed the procedures delineated by the University to obtain reasonable accommodations for his disabilities. He provided SDS with all requisite medical documentation describing his disabilities. Contrary to Dr. King's conclusion, Ian requested numerous reasonable accommodations to address his academic needs.

68. Such accommodations would have been more than reasonable for the University to make available to Ian. Instead, SDS constrained Ian to selecting from a predetermined list of accommodations, which did not adequately address Ian's individual needs.

69. Defendant thereby violated Section 504 of the Rehabilitation Act by failing to engage in the interactive process and to provide reasonable accommodations to Ian. Furthermore, given that Defendant was aware of Ian's particular vulnerabilities and the series of traumas

11

he endured throughout college, its refusal to provide such reasonable accommodations was not only a violation of Section 504, but a willful or deliberately indifferent one.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiff respectfully requests Judgment in his favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

### COUNT III – VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

70. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

71. Title II of the ADA is similar to Section 504, but extends the nondiscrimination rule of Section 504 to services provided by "any public entity," without regard to whether the entity is the recipient of federal funds. 42 U.S.C. § 12132.

72. "The remedies, procedures, and rights set forth in [Section 504] shall be the remedies, procedures, and rights [Title II of the ADA] provided to any person alleging discrimination on the basis of disability in violation of [Title II]." 42 U.S.C. § 12133.

73. Plaintiff asserts that from August 2013 until August 2017, the University discriminated against Ian in violation of the ADA by failing to engage in the interactive process throughout Ian's education by refusing to collaborate to facilitate appropriate accommodations, and failing to provide Ian with a reasonable accommodation by refusing him the opportunity to transfer to the College of Arts and Sciences

**WHEREFORE,** based on the foregoing facts and claims, Plaintiff respectfully requests Judgment in his favor and against Defendant and prays the Court grant, as appropriate,

compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

Dated: 13 December 2017

Respectfully Submitted,

_____
Michael D. Raffaele (PA ID 91615)
Frankel & Kershenbaum
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
Michael@MyKidsLawyer.com
*Counsel for Ian Clayman*

_____
Jennifer P. Grobe (PA ID 323085)
Frankel & Kershenbaum
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
Jennifer@MyKidsLawyer.com
*Counsel for Ian Clayman*